UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

JIMMY E. CLARK and TAMMY CLARK,   )
           Plaintiffs,      )
                       )
vs.                 )      1:07-cv-0131-LJM-JMS
                       )
OSHKOSH TRUCK CORPORATION and   )
JERR-DAN,              )
           Defendants.     )

## ORDER

      This cause is before the Court on Defendants', Oshkosh Truck Corporation and Jerr-Dan (the

defendants collectively, "Jerr-Dan"), Motion for Summary Judgment (Docket No. 21).[1]  Plaintiffs,

Jimmy E. Clark ("Jimmy") and Tammy Clark ("Tammy") (the plaintiffs collectively, "Plaintiffs"),

filed this product liability lawsuit after Jimmy sustained injuries from a slip and fall while walking

on a rollback bed of a truck manufactured by Jerr-Dan.  Plaintiffs contend that Jerr-Dan failed to

provide proper instruction for the safe use of the truck and failed to provide reasonable and adequate

warnings.  Jimmy seeks to recover damages for his injuries while Tammy seeks to recover on a loss

of consortium claim.

      For the reasons stated herein, Jerr-Dan's motion for summary judgment is **GRANTED in**

**part and DENIED in part**.

---

[1]  Jerr-Dan has also filed a request for oral argument on their motion.  *See* Docket No. 23.
Because the Court concludes that the parties' briefs adequately inform the Court of the issues, the
request for oral argument is **DENIED**.

# I. <u>BACKGROUND</u>

Jimmy was working as a repossession agent for Lender's Recovery Service ("Lender's") on December 12, 2005, when the incident in question occurred.  Compl., ¶ 1; Clark Dep. at 23; Clark Aff., ¶¶ 2, 11.  At the time of the incident, there was freezing rain and ice on the ground.  Clark Dep. at 38.  However, even though the truck in question had been exposed to the elements, Jimmy stated that he did not need to shovel or remove snow, ice, or water from the truck bed at the time of his fall.  Clark Dep. at 71-73.  Jimmy slipped while walking on the raised rollback bed, caught his foot in an open-sided rub rail, and tumbled over the side of the truck.  Clark Dep. at 38-40, 52, 77, 79; Clark Aff., ¶¶ 5, 8.  As a result of this slip and fall, Jimmy suffered injuries to his knee, neck, and back and has undergone medical and surgical treatment for those injuries.  Clark Dep. at 39-40, 52, 77, 79; Clark Aff., ¶ 8.

At the time of the incident, Jimmy had worked for Lender's for four-and-a-half years using rollback trucks similar to the one that he used the day of the slip and fall.  Clark Dep. at 23, 27-28, 115, 117; Clark Aff., ¶¶ 2, 11.  The trucks used by Jimmy had a slick bed and open-sided rub rails because those were the specifications requested by Lender's when it purchased the vehicle. Defs.' Ex. D; Kuriakose Aff., ¶ 5.  Prior to December 12, 2005, Jimmy had slipped and fallen on the truck's bed on two other occasions, although without injury each of those times.  Clark Dep. at 63-69; Defs.' Ex. E.

Jimmy never read the operator's manuals or observed any instructional materials for any of the vehicles he used, but he did receiving training on the job from other co-workers on the operation of rollback bed trucks.  Clark Dep. at 25, 27, 32-34; Clark Aff., ¶ 11.  That training involved instructions to tie down all four corners of a vehicle being towed and to set the parking brake before

transporting the vehicle.  Clark Dep. at 42, 44, 50; Clark Aff., ¶¶ 13-14.  In addition, it was Jimmy's practice to drive a vehicle to be towed up the inclined ramp.  Clark Dep. at 46-47.

In training Jimmy also learned that after transporting a vehicle, unloading it required releasing the tie downs and parking brakes.  According to Jimmy there was no way to release the front tie downs or the parking brake when unloading the vehicle without walking on the inclined bed, particularly if the towed vehicle was a small vehicle.  Clark Dep. at 47, 49-50, 56; Clark Aff., ¶¶ 13-15.

The operator's manual and safety video included with the vehicle instructed users not to drive a vehicle onto the inclined bed.  Defs.' Ex. C at 2.3; Defs.' Ex. G.  Those materials did not, however, warn users not to walk on the truck bed or specify how to unload small vehicles.  *Id.*

## II.  SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment is the "put up or shut up" moment in a lawsuit.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*.  Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists

whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment

must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

## III.  DISCUSSION

### A.  INDIANA PRODUCTS LIABILITY ACT

Plaintiffs' substantive claims are governed by Indiana Code § 34-20-1-1 *et seq.*, which is Indiana's Products Liability Act (the "Products Liability Act"). Regardless of Plaintiffs' substantive legal theories, the Products Liability Act governs because Plaintiffs are product users who contend that Jerr-Dan, the product manufacturer, is liable for Jimmy's injuries when it failed to provide proper instruction for the safe use of the truck and rollback bed and failed to provide reasonable and adequate warnings. *See* Ind. Code § 34-20-1-1.

The Products Liability Act provides, in relevant part:

Except as provided in section 3 of this chapter[2], a person who sells, leases or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

_____

[2]Section 3 provides: "A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective." Ind. Code § 34-20-2-3.

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1.

Furthermore, the Products Liability Act specifies when a product is defective. It provides, in relevant part:

A product is in a defective condition under this article if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

* * *

A product is defective under this article if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product;

when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer

Ind. Code §§ 34-20-4-1 & -2.

In other words, under the Products Liability Act, "a plaintiff must prove that: (1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries." *Deaton v. Robison*, 878 N.E.2d 499, 501 (Ind. Ct. App. 2007) (citing *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) *trans. denied*). "The requirement that the

6

product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer." *Welch v. Scripto-Tokai Corp.*, 651 N.E.2d 810, 814 (Ind. Ct. App. 1995) (citing *Cox v. Am. Aggregates Corp.*, 580 N.E.2d 679, 685 (Ind. Ct. App. 1991)).

Furthermore, "a product may be defective under the [Products Liability Act] where the manufacturer fails in its duty to warn of a danger or instruct on the proper use of the product as to which the average consumer would not be aware." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (citing *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 281 (Ind. 1983)). If the action is based on design defect or failure to warn or instruct, the plaintiff "must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." Ind. Code § 34-20-2-2.

A product is unreasonably dangerous when it "exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers." Ind. Code § 34-6-2-146.

## B. FAILURE TO WARN AND INSTRUCT

The Plaintiffs present two theories of liability under the Products Liability Act: 1) that Jerr-Dan failed to warn of the dangers associated with walking on the rollback bed; and 2) that Jerr-Dan failed to provide adequate instructions on how to operate the rollback bed, especially when the operator is of average size and the vehicle is a mid-size or small. Pls.' Br. Opp'n, at 13. For the

reasons stated below, the Court **GRANTS** summary judgment on the failure to warn theory and **DENIES** summary judgment on the failure to instruct theory.

The Court concludes that Plaintiffs cannot prove defectiveness due to failure to warn because Jerr-Dan had no duty to warn of any dangers associated with the rollback bed's open and obvious conditions. The open and obvious danger rule applies in products liability claims based on common law negligence. *See Welch*, 651 N.E.2d at 815 (citing *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990)). "The open and obvious danger rule provides that a manufacturer of a product is liable only for defects which are hidden and not normally observable . . . the manufacturer has no duty to warn if the danger is open and obvious." *Id.* (citing *Koske v. Townsend Eng'g Co.*, 551 N.E2d 437, 442 (Ind. 1990)).

The Court cannot say that Jerr-Dan failed to give reasonable warnings because the conditions of the rollback bed were contemplated by Jimmy, who was personally aware of the slick nature of the rollback bed. Specifically, prior to the accident in question, Jimmy compared the bed to glass and twice complained about the rollback bed's slippery surface. Clark Dep. at 58-60. Thus, Jerr-Dan had no duty to warn and is entitled to summary judgment on this argument. *See Welch*, 651 N.E.2d at 815.

Jimmy nonetheless argues that the open and obvious defense doesn't apply because although he knew the bed was slick, he did not expect to fall after he slipped and got his foot stuck under the rail. Pls.' Br. Opp'n, at 10. The Court, however, concludes that the specific mechanics of Jimmy's fall are irrelevant because of the plainly visible characteristics of the rollback bed, which Jimmy recognized. Therefore, Jerr-Dan is entitled to summary judgment on this argument as well.

Regardless, Jimmy claims that operation of the rollback bed requires the operator to walk on the bed on many occasions. Pls.' Br. Opp'n, at 8-9. As such, the Court must inquire into whether Plaintiffs have presented sufficient evidence to support their claim that Jerr-Dan failed to adequately instruct on the proper and safe use of the rollback bed.

The Court concludes that Plaintiffs have designated sufficient evidence to support their failure to instruct theory. According to Plaintiffs, neither Jerr-Dan's safety video nor its operations manual adequately instructs on the use of the rollback bed and truck:

> [T]he safety video does not attempt to show the winch being unwound from its original position, nor does the video attempt to show how the parking brake is sent on the vehicle after it is loaded on the bed as required by the instruction manual, nor does it attempt to show how the front tie downs are affixed, certainly not on a small vehicle, and finally, the safety video does not show the reverse of these procedures required to unload the vehicle.

*Id.* at 9. As mentioned above, Plaintiffs specifically argue that it is impossible for a person of average size to perform certain required tasks while standing on the ground, especially if the vehicle is a mid-size or small one. *Id.* at 13.

Jerr-Dan does not address Plaintiffs' failure to instruct theory. Rather, it appears that Jerr-Dan continues to rely on the same arguments for all claims: that any dangers associated with the use of the rollback bed and truck were obvious and that Jimmy's misuse of the product caused his injury. However, even if the Court concludes that no features of the rollback bed or truck were concealed, a reasonable jury could still find that an average consumer would not be aware of how to safely perform certain required tasks absent adequate instructions, particularly when a person of average stature attempts to load or unload a mid-size or small vehicle. As such, a reasonable jury could find that Jerr-Dan's inadequate instructions rendered the rollback bed and truck defective and

unreasonably dangerous to an average consumer.  Indeed, Indiana law provides that "[w]hile a manufacturer is under no duty to produce accident proof products, it is legally bound to design and build products which are reasonably fit and safe for the purpose for which they are intended." *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 482 (Ind. Ct. App. 2000) (quoting *Liberty Mut. Ins. v. Rich Ladder Co., Inc.*, 441 N.E.2d 996, 999 (Ind. Ct. App. 1982)).

After reviewing both the safety video and operations manual, the Court concludes that the Plaintiffs have presented sufficient evidence to suggest that Jerr-Dan's rollback bed and truck were defective under Indiana Code § 34-20-4-2.  Specifically, Plaintiffs have created a material issue of fact on the question of whether Jerr-Dan failed to provide "reasonably complete instructions on the proper use of the [rollback bed and truck] . . . when [Jerr-Dan], by exercising reasonable diligence, could have made such . . . instructions available to the user."  Ind. Code § 34-20-4-2.

As a final argument, Jerr-Dan claims that it is entitled to summary judgment because Jimmy's accident was the result of his own negligence.  However, because the Plaintiffs have raised a genuine issue of material fact as to whether Jerr-Dan provided adequate instructions, the Court cannot say whether a reasonable jury would find that Jimmy bore greater fault for this accident than Jerr-Dan.  *See Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1031 (Ind. Ct. App. 2003).  The Court therefore cannot grant summary judgment on this basis.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants', Oshkosh Truck Corporation and Jerr-Dan, Motion

for Summary Judgment (Docket No. 21) is **GRANTED in part** and **DENIED in part** and their

Request for Oral Argument on the same (Docket No. 23) is **DENIED**.

IT IS SO ORDERED this 10th day of July, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

John Richard Helm                                Richard A. Smikle
SCHRECKENGAST HELM & CUELLER        ICE MILLER LLP
jrhlaw@sbcglobal.net                            richard.smikle@icemiller.com

                                                Michael Christian Steele
                                                ICE MILLER LLP
                                                michael.steele@icemiller.com